### COUNCIL ROCK SCHOOL DISTRICT, Appellant,

v.

### WRIGHTSTOWN TOWNSHIP ZONING HEARING BOARD.

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.
Decided March 30, 1998.

---

John A. VanLuvanee, Doylestown, for appellant.

Brett G. Mandes and Terry W. Clemons, Doylestown, for appellee.

Before SMITH and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The Council Rock School District (Council Rock) appeals the order of the Court of Common Pleas of Bucks County (trial court) that affirmed a decision of the Wrightstown Township Zoning Hearing Board (Board) denying Council Rock's application for a special exception. We affirm.

Council Rock is the equitable owner of the 71.1 acres of land located in Wrightstown Township at issue in this case. The property, which is presently farmland, is under a conditional agreement of sale to Council Rock. Council Rock has proposed to construct upon the property a one-story middle school of approximately 140,000 to 160,000 square feet. The school would be designed to accommodate a maximum of 1200 persons, including students, teachers, and support staff.

On August 19, 1996, Council Rock submitted to the Board an application for a special exception to build the proposed school. A middle school is a permissible use by special exception within the zoning district in which the property lies. Several hearings were held before the Board. Council Rock, however, provided little information about its

proposal except for the lot size and location and the information set forth above. As the trial court explained:

> Although a plot plan was submitted [by Council Rock] as prepared by a registered engineer, it displayed only the configuration of the property itself showing the two lots which are not included, a metes and bounds description and various soils information. However, it did not show elevations, the proposed footprint of the building, access roads, location of playing fields, landscaping, surface water management, nor any proposed access except by its frontage on Route 413. However, the number of access points or their location was not shown. Furthermore, there was no evidence regarding the manner of sewer disposal or the source of the building's water supply. In fact, it was testified that none of these matters had, as yet, been determined. Because of this dearth of information and evidence and because of Council Rock's failure to meet the specific requirements of the Zoning Ordinance relating to special exceptions, the Board denied the application.

Trial Court Opinion, p. 3.

█ Council Rock appealed the Board's denial of its special exception application. The trial court affirmed, concluding that Council Rock's failure to demonstrate that its proposal would be in conformity to the requirements necessary to obtain a special exception pursuant to the applicable zoning ordinance (Ordinance)[1] was fatal to its application. This appeal followed. Our scope of review where, as here, the trial court took no evidence of its own, is limited to determining whether the Board committed an error of law or abused its discretion. *Bachman v. Zoning Hearing Board of Bern Township*, 508 Pa. 180, 494 A.2d 1102 (1985). The Board is joined in opposing Council Rock's appeal by certain residents of Wrightstown and Newtown Townships.

Council Rock argues that the Board committed an error of law by failing to issue the requested special exception. This argument is based on the supposition that the Board is preempted from denying a special exception by provisions of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702 (School Code). In particular, Section 702 of the School Code provides that "[t]he location and amount of any real estate required by any school district for school purposes shall be determined by the board of school directors of such district. . . ." 24 P.S. § 7–702. Based on this provision, we have held "that a municipality may not, through land use regulations or zoning ordinances, limit a school district's power to choose the location of school grounds." *School District of Pittsburgh v. City of Pittsburgh*, 23 Pa.Cmwlth. 405, 352 A.2d 223, 227 (1976). *See also Pemberton Appeal*, 434 Pa. 249, 252 A.2d 597 (1969); *School District of Philadelphia v. Zoning Board of Adjustment*, 417 Pa. 277, 207 A.2d 864 (1965). Council Rock therefore argues that because the Board is precluded from directing where a school district may locate its schools, the Board had no discretion but to issue Council Rock's requested special exception.

█ Council Rock further argues that the special exception provisions of the Ordinance are the essential equivalent of conditional use requirements. In *School District of Pittsburgh*, we determined that the Supreme Court in *Pemberton Appeal* indicated that conditional use requirements in a zoning ordinance may not prohibit a school district from building its schools at any chosen location.[2] Council Rock therefore argues that the requirements for a special exception in the Ordinance are likewise inapplicable to its plan to build a school, as a special exception simply pertains to use rather than structural matters. Council Rock does not dispute that

1. The Joint Municipal Zoning Ordinance of Wrightstown, Newtown, and Upper Makefield Townships.

2. A conditional use is one specifically recognized by the legislature that is consistent with the zoning plan, and it should be denied only where the adverse impact on the public interest exceeds

"that which might be expected in normal circumstances." *Appeal of the Estate of Achey*, 86 Pa.Cmwlth. 385, 484 A.2d 874, 876 (1984), *aff'd*, 509 Pa. 163, 501 A.2d 249 (1985). A conditional use is a species of special exception. Ryan, *Pennsylvania Zoning Law and Practice*, § 5.1.4.

it must adhere to the structural requirements of the Ordinance in building the school. It argues, however, that it is entitled to special exception approval at this stage based solely on its demonstration that it desires to use the property to build a school.

The Board, by contrast, does not dispute that Council Rock may use the property for school purposes. It contends, however, that Council Rock must still submit an application for a special exception that meets the requirements of the Ordinance, as would any developer.[3] In support, the Board relies upon the very same cases cited by Council Rock, particularly *School District of Philadelphia* and *School District of Pittsburgh.*

In *School District of Philadelphia,* the issue before the Supreme Court was whether a zoning board is empowered to require a school district to comply with zoning regulations concerning off-street parking at a proposed new school. The school district argued that legislation pertaining to cities of the first class prohibited the City of Philadelphia from regulating public schools, and therefore the City could not impose zoning regulations concerning off-street parking upon the school district's proposed school. The Court rejected this argument, concluding that a regulation of the public schools does not occur when a city imposes a local requirement concerning off-street parking, or, for that matter, any zoning regulation enacted for the health, safety, and general welfare of the community. The Court went on to state:

> In arriving at [this] conclusion, we are not unmindful of the fact that the ... School Code ... places in the School District the duty of providing the grounds and buildings necessary to the performance of administering the Commonwealth's system

of public education, and the discretion of determining the location and size of the real estate for this specific purpose. However, we do not consider the imposition of a zoning regulation as here involved to amount to an interference with these vested responsibilities, nor do we interpret these specific provisions of the [School] Code to preclude the City from imposing a duty to acquire additional land in connection with a proposed site when such is necessary for the protection of the health, safety and welfare of the community. And this is exactly what the zoning regulation involved [pertaining to off-street parking] purports to do.

*School District of Philadelphia,* 417 Pa. at 284–85, 207 A.2d at 868.

The Court also noted that Section 8 of the Act of April 27, 1927, P.L. 465, 35 P.S. § 1228 (which act provides for safety and health regulations for certain buildings in the Commonwealth, including schools) provides that no applicable building or structure shall be erected unless, among other things, a building permit is obtained as required by the local ordinance. Thus, the Court determined that the legislature has ensured that local concerns regarding safety and health issues shall be applicable to the erection of schools despite powers granted to school boards to regulate, locate, and determine the size of schools. The Court quoted with approval language from the Supreme Court of Texas in *Port Arthur Independent School District v. City of Groves,* 376 S.W.2d 330, 334 (Tex. 1964):

> 'The city, in performing its duties as delegated to it by the state, does not usurp the authority and responsibility of the school district in the realm of education by requiring the school buildings to meet cer-

---

**3.** Section 1507.E of the Ordinance provides, among other things, that a party seeking a special exception must demonstrate that the existing public water, sanitary sewer, and drainage systems can provide for the needs of the proposed use without extensions beyond those that the applicant will provide, and that the existing street systems can provide for the needs of the proposed use without substantially altering traffic patterns or overloading the systems without extensions beyond those provided by the applicant. It further provides that the applicant will

demonstrate to what extent the environmentally significant qualities of the site will be affected by the proposal. Further, Section 803.C–2 of the Ordinance sets forth certain requirements for schools, including a minimum lot size, access to an arterial or collector road, screening of outdoor play areas to protect neighbors from inappropriate noise and other disturbances, and parking requirements. As stated previously, Council Rock submitted virtually no information regarding these matters in support of its application for a special exception.

tain minimum standards of construction any more than it usurps the control and management of individuals and private corporations over their property and affairs by making them meet those same standards.'

*School District of Philadelphia,* 417 Pa. at 287, 207 A.2d at 870.

The Court also stated in dicta, however:

We feel constrained to state at this point that the question of whether or not the City can prevent the erection of a school building in any particular zoning district has not been raised on this appeal for the reason that the Board found as a matter of fact that a school was a permitted use in the districts here involved. We therefore find it unnecessary to determine whether the Commonwealth has an overriding interest in the fact of existence, as opposed to the manner of construction, of school buildings in the City of Philadelphia. We would consider it highly doubtful, however, that the City could 'zone-out' schools entirely, or could limit the statutory grants of discretion applicable to all school directors within the Commonwealth to choose the location of school grounds (24 P.S. § 7–702).

*Id.* at 289, 207 A.2d at 871. It is this language that Council Rock relies upon; the Board relies upon the previously-quoted language of this case.

In *Pemberton Appeal,* the Supreme Court was called upon to address the very issue of whether a municipality has the power to "zone-out" schools within a zoning district. In that case, a school district was prohibited from erecting a school within a zoning district because a school was not a permitted use within that district by special exception or otherwise. The Court held that the power granted by the School Code to school districts to locate schools prohibited a municipality from excluding schools within a zoning district.

In *School District of Pittsburgh,* this Court noted *School District of Philadelphia* and *Pemberton Appeal* as holding that a mu-

nicipality may not interfere with a school district's power to locate a school facility anywhere in the school district. We held, however, that a school district must nevertheless make all required applications for local permits, together with all necessary documentation, for the construction of a school facility as would be required of any developer in the community. We recognized a distinction between use requirements in a zoning ordinance, to which we determined school districts are not subject pursuant to *Pemberton Appeal,* and local building requirements, which are applicable to school districts in accordance with *School District of Philadelphia.* We noted that the School District of Pittsburgh had complied with all zoning and building requirements except for the requirement for conditional use approval. Therefore, we held that the school district had a clear legal right to the issuance of building, occupancy, and land operations permits.

■ Since *Pemberton Appeal* and our holding in *City of Pittsburgh,* however, the Supreme Court has revisited the issue of resolving conflicts between the powers of Commonwealth entities to utilize real property pursuant to statutory mandate and local zoning regulations.[4] Although the Supreme Court has not overruled the holding of *Pemberton Appeal,* it has shed doubt upon whether a school district is exempt from use regulations regarding the erection of its schools.

In *Department of General Services v. Ogontz Area Neighbors Ass'n,* 505 Pa. 614, 483 A.2d 448 (1984), the Court reviewed the issue of whether a zoning board may enforce its *use* and structural regulations against a Commonwealth agency, the Department of General Services (DGS), that desired to erect a center for mentally handicapped individuals on property acquired by the Department of Public Welfare (DPW) pursuant to a legislative mandate to relocate former patients of the Pennhurst State School and Hospital. The legislative mandate permitted DPW to condemn property to establish mental health facilities. Because of this legislative grant of power, the trial court and a divided panel of

---

4. A school district is an agency of the Commonwealth. *Borough of Wilkinsburg v. School District of Wilkinsburg,* 365 Pa. 254, 74 A.2d 138 (1950).

this Court determined that DGS was immune from local use restrictions. The Supreme Court determined, however, that a legislative mandate to a Commonwealth entity to locate its facilities and condemn property for this purpose does not necessarily mean that this entity may act without regard to local zoning regulations, including use regulations.[5] The Court stated:

> The conflict ... is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act; and, generally, the task of courts in these cases is to determine, through an examination of the enabling statutes applicable to each of the governmental entities, which the legislature intended to have preeminent powers. The problem, essentially, is one of statutory interpretation.

*Ogontz,* 505 Pa. at 622–23, 483 A.2d at 452.

■ When a review of the applicable legislation makes indecipherable the intent of the legislature concerning preemption, a reviewing court must then apply rules of statutory construction, in particular the rule that legislative intent may be determined by a consideration, among other things, of the consequences of a particular interpretation. Applying this rule in *Ogontz,* the Court made the following holding:

> The consequences of deciding that the Commonwealth should be preeminent in this matter are that Philadelphia's zoning scheme would be frustrated in this case and in every case where a Commonwealth land use plan conflicted with the city plan. On the other hand, if the city were to prevail, the Commonwealth's mandate to establish mental health facilities at various locations in the state would not necessarily be frustrated, for the loss of one location might well be compensated for by substitution of another. Thus, deciding that the city's zoning authority supersedes that of

the Commonwealth agency to establish a mental health facility in a particular geographical location arguably would give effect to the legislative mandates of both governmental entities, a consequence which, absent more certain legislative direction, seems advisable. Accordingly, we hold that DPW is subject to the jurisdiction of the Zoning Board and that in the case of a conflict between DPW's land use plans and the zoning use regulatory scheme of Philadelphia, the zoning scheme shall prevail. We decline to infer a legislative intent that the Commonwealth agency has preemptive land use powers. Of course, should the legislature determine that one or more Commonwealth agencies or projects should be empowered to supersede local land use regulations, it need only pass legislation to that effect.

*Id.* at 628, 483 A.2d at 455.

The Court in *Ogontz* also remarked upon its prior analysis in *Pemberton Appeal* and opined that the legislative directive in the School Code for school districts to "locate and determine" schools relates simply to planning. The implication is that this directive does not preempt local zoning concerns. *Id.* at 627, 483 A.2d at 454. *See also County of Venango v. Borough of Sugarcreek Zoning Hearing Board,* 534 Pa. 1, 626 A.2d 489 (1993) (legislative authority for county commissioners to purchase or take such land as it deems necessary for the creation of a county prison or other building, or to use any county property for these purposes, does not establish a clear legislative intent that the use of county property may be made without regard to local land use regulations).

■ Therefore, we are not persuaded that Council Rock is entitled to a special exception based solely upon an affirmation that the property will be used as a school under current authority. Clearly, a school district is required to comply with standards and conditions set forth in a zoning ordinance pursuant to *School District of Philadelphia* and *School District of Pittsburgh.*[6] *Ogontz* and *County*

---

**5.** A school board may also condemn property to acquire real estate for school purposes. Section 703 of the School Code, 24 P.S. § 7–703.

**6.** Indeed, pursuant to *School District of Philadelphia,* the Board could even require Council Rock to obtain more land to satisfy the health, safety, and general welfare requirements of the Ordi-

*of Venango* suggest further that local use regulations may apply as well. The School Code provides no stronger mandate to school boards than that provided to the entities in *Ogontz* and *County of Venango* where the entities were each held subject to local use restrictions. We further note that the case before us bears little resemblance to *Pemberton Appeal* or *City of Pittsburgh*, the cases principally relied upon by Council Rock. In this case, there is no attempt to "zone-out" Council Rock's proposed middle school, as happened in *Pemberton Appeal*. Also, Council Rock has not established its right to proceed on its plan to build a school by meeting the necessary requirements of the Ordinance, as did the school district in *City of Pittsburgh*. Here, Council Rock made no attempt to comply with the requirements necessary to obtain a special exception except to give evidence that the proposed use of the property is for a school.

██ A special exception, however, may impose all manner of reasonable conditions for the protection of the health, safety, and welfare of the community which the applicant must meet. *B & B Shoe Products Co. v. Zoning Hearing Board of Manheim Borough*, 28 Pa.Cmwlth. 475, 368 A.2d 1332 (1977). As this Court stated in *Rapaport v. Zoning Hearing Board of the City of Allentown*, 687 A.2d 29, 31 (Pa.Cmwlth.1996):

> A special exception has been defined as a permitted use in which the applicant establishes that the proposed use satisfies the requirements of the zoning ordinance. An application for a special exception initially involves a determination as to whether or not the application meets the criteria of the ordinance's special exception provision.

Further, Section 912.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of Dec. 21, 1988, P.L. 1329, 53 P.S. § 10912.1, provides that a local zoning board shall hear and decide requests for special exceptions *in accordance with the express standards and criteria* set forth in the zoning ordinance. Thus, in order to obtain a special exception, an applicant must demonstrate more than the intention to pursue a permitted use.

In *Edgmont Township v. Springton Lake Montessori School, Inc.*, 154 Pa.Cmwlth. 76, 622 A.2d 418 (1993), we stated:

> To be entitled to receive a special exception it [is] incumbent on the [applicant] to come forward with evidence detailing how it was going to be in compliance with the requirements necessary to obtain a special exception to operate [its facility in the applicable zoning district]. Evidence is not a 'promise' that the applicant will comply because that is a legal conclusion the Board makes once it hears what the applicant intends to do and then determines whether it matches the requirements set forth in the ordinance.

*Id.* 622 A.2d at 419.[7]

We therefore hold that the Board did not err by denying Council Rock's application for a special exception to build a middle school when Council Rock failed to demonstrate compliance with the standards and criteria applicable to its request. The order of the trial court is affirmed.

### ORDER

AND NOW, this 30th day of March, 1998, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

---

nance before it may erect a school upon the property.

7. Although *Edgmont Township* dealt with the application of a private, not a public, school, we believe its language concerning the duty on the applicant to present a case sufficient to receive a special exception is applicable to the present case.